AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**black Apple iPhone 14 Pro Max cellular telephone**<br>**FP&F number 2024250400099901-0003** | )<br>)<br>)<br>)<br>)<br>)    Case No.    '24 MJ1641 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 545 | Smuggling/Importation Contrary to Law |
| 42 USC 7675 and 7413 | Illegal Importation of Regulated Substances |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

James Reavis / Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 04/25/2024 _____

_____
*Judge's signature*

City and state: San Diego, California

Hon. Allison H. Goddard, US Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

The property (**Target Device**) to be searched is a black Apple iPhone 14 Pro Max Cellular telephone given the identifying number of FP&F 2024250400099901-0003 at the time it was seized. The **Target Device** is currently in the possession of the Environmental Protection Agency, Criminal Investigation Division, at 880 Front Street, in San Diego, California, in the Southern District of California.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

This warrant authorizes the search and analysis of the **Target Device** and any storage devices, such as SIM cards or flash memory devices attached to, inserted into or seized with the device. The items to be seized are limited to the following items, consisting of evidence of Smuggling and Importation Contrary to Law, in violation of 18 U.S.C. § 545; and the Illegal Importation and Sale of Regulated Substances, in violation of 42 U.S.C. §§ 7413(c) and 7675, and Title 40, Code of Federal Regulations, Sections 82.15 and 84.5(b) and (f), for the period from February 22, 2024, through April 22, 2024, in accordance with the "Methodology" provided in the affidavit submitted in support of this warrant:

  1. The cellular telephone identified as the **Target Device,** and communications, records, or data, including emails, text messages, photographs,

third party application data, audio files, videos, or location data:

  a. tending to indicate efforts to import and transport hydrofluorocarbons (HFCs);

  b. tending to indicate contact with individuals regarding the location(s) at which the HFCs might be used;

  c. tending to identify electronic media accounts–such as email addresses, IP addresses, social media accounts and phone numbers– used to facilitate the

2

importation and sale of HFCs;

d. tending to identify co-conspirators, criminal associates, or others involved in importation of HFCs;

e. tending to identify travel to or presence at locations involved in the importation of HFCs;

f. tending to identify proceeds associated with the importation of HFCs into the United States;

g. tending to identify information regarding the legal requirements applicable to the importation of HFCs into the United States;

h. tending to indicate official authorization to import HFCs;

i. tending to identify the user of, or persons with control over or access to, the **Target Device**;

j. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above; and

k. images of regulated substances identified in the cited sections of the Clean Air Act, and accompanying regulations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, James Reavis, Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn, do hereby state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for a search warrant in furtherance of an investigation being conducted by HSI, together with the Environmental Protection Agency, for a black Apple iPhone cellular telephone assigned the identifying number of FP&F 2024250400099901-0003 at the time of seizure (the **Target Device**) as described in Attachment A, and seize items constituting evidence, fruits and instrumentalities of federal crimes, specifically violations of Smuggling and Importation Contrary to Law, in violation of 18 U.S.C. § 545; and the Illegal Importation and Sale of Regulated Substances, in violation of 42 U.S.C., §§ 7413(c) and 7675, and Title 40, Code of Federal Regulations (CFR), Sections 82.15 and 84.5(b) and (f), as further described in Attachment B, for the period from February 22, 2024, through April 22, 2024.

2. The **Target Device** is currently in the possession of the Environmental Protection Agency (EPA), Criminal Investigation Division, at 880 Front Street, San Diego, California, in the Southern District of California. Customs and Border Protection officers seized the **Target Device** on April 22, 2024, from Jose Manuel VALENZUELA (VALENZUELA) after discovering undeclared canisters containing refrigerants in the

4

vehicle he was driving as he attempted to enter the United States (U.S.) at the San Ysidro Port of Entry (POE).

3. As set forth in more detail below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information set forth in this affidavit is based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated. Because this affidavit is submitted for the limited purpose of obtaining a search warrant for the **Target Device,** it does not set forth every fact that I or others have learned during the course of this investigation, but only contains those facts believed to be necessary to establish probable cause for the requested warrant.

**EXPERIENCE AND TRAINING**

5. I am employed as a full time Special Agent for the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI). Your affiant is assigned to the office of the Deputy Special Agent in Charge in San Ysidro, California and have been so employed since August 2009. I

5

am currently assigned to conduct investigations involving the smuggling of goods into the United States. My current responsibilities include investigating the smuggling of goods, into the United States from Mexico or another place outside of the United States. While working as a Special Agent with HSI, I have directed or otherwise been involved in investigating violations of federal and state law, including smuggling into the United States, money laundering and fraud against the government.

6. My experience includes many arrests, searches, and interviews. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of smugglers, including those who attempt to import illegal refrigerants into the United States from Mexico at the San Diego International Ports of Entry.

**BACKGROUND**

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is an increasingly common practice for regulated substances, including refrigerants, to be smuggled into the United States from Mexico. Refrigerants known as hydrofluorocarbons (HFCs) are greenhouse gases commonly used in a wide variety of applications, including refrigeration, air-conditioning, building insulation, fire extinguishing systems, and aerosols. HFCs have high global warming potential, raising concern about their impacts as they become increasingly used as replacements for ozone-depleting substances, and as economic growth spurs demand for new equipment, especially in the refrigeration/air conditioning sector.

6

8. As part of the American Innovation and Manufacturing Act of 2020, Congress amended the Clean Air Act (CAA) to include an additional list of regulated substances, at 42 U.S.C. §7675(c)(1), which include HFC-125, HFC-134a and HFC-143a. Congress further directed the Administrator of the EPA to devise a schedule to phase out the use of these regulated substances, and indicated that any such rules or regulations promulgated by the EPA were to be enforceable under Section 7413 of the CAA as if they had been expressly included in subchapter VI (Section 7671 of the CAA, which relates to ozone depleting substances.) Thereafter, the EPA promulgated the regulations found at 40 CFR §84.5, which, beginning on January 1, 2022, prohibit the importation of bulk regulated substances without a consumption allowance. Section 7413(c)(1) of the CAA provides that anyone who knowingly violates a requirement or prohibition relating to stratospheric ozone control found in subchapter VI shall be guilty of a felony.

9. Based on my training and experience, and conversations with other law enforcement officers, I know that smugglers of regulated substances containing HFCs work in concert with other individuals and do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving smuggling of regulated substances generate many types of electronic evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators.

10. Based upon my training and experience, conversations with a EPA representatives, and my consultations with law enforcement officers experienced in smuggling investigations, and all the facts and opinions set forth in this affidavit, I further submit the following:

a. Smugglers of regulated HFCs, like drug smugglers, use cellular telephones because the devices are mobile and provide instant access to telephone calls, texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and voice messages;

b. Smugglers of regulated HFCs, like drug smugglers, use cellular telephones because they can actively monitor the progress of the illegal cargo while the conveyance is in transit;

c. Smugglers of regulated HFCs and their accomplices, like drug smugglers, use cellular telephones because the phones help them arrange for the delivery of cargo at predetermined locations and to monitor and plan for arrivals; and

d. Smugglers of regulated HFCs, like drug smugglers, use cellular telephones to direct couriers to synchronize drop off and pick up times of the illegal cargo.

11. Subscriber Identity Module ("SIM") cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists, and stored text messages. Much of the evidence generated

by a smuggler's use of a cellular telephone would likely be stored on any SIM card that has been utilized in connection with that telephone.

12. Based on my experience and training, and conversation with other law enforcement officers, I know that the use of cellular telephones by smugglers tends to generate evidence stored on the cellular telephones, including but not limited to emails, text messages, application-based communications, images, audio files, call logs, address book entries, IP addresses, social network data, and location data. This evidence can include records of financial transactions, shipping and transportation records, records of searches of internet databases regarding the legal requirements relating to their activities, as well as images of any permits or official authorization for their activities.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

13. According to CBP reporting, at approximately 12:21 pm on April 22, 2024, Jose Manuel VALENZUELA entered the United States at the San Ysidro Port of Entry as the driver, sole occupant, and registered owner of a Toyota Tundra truck bearing California license plates. The Customs and Border Protection (CBP) officer at primary inspection asked VALENZUELA if he had anything to declare, to which he responded that he did not. The primary inspector noticed a large black plastic trash bag in the backseat covering something. The inspector unwrapped the plastic trash bag and discovered undeclared boxes of 404A refrigerant. VALENZUELA and his vehicle were then sent to secondary inspection for further inspection.

9

14.     During the secondary inspection, four twenty-four-pound tanks of the hydrofluorocarbon (HFC) 404A were found concealed on the rear floorboard of the vehicle. The tanks of refrigerant were then seized.

15.     After being advised of his Constitutional rights and waiving his rights in writing, VALENZUELA stated that he purchased the tanks of HFCs in Mexico and was bringing them into the United States for his own use. VALENZUELA stated that he had been employed as a heating, ventilation and air conditioning (HVAC) technician for over 20 years and had been certified by the Environmental Protection Agency to purchase, handle and reclaim regulated refrigerants. VALENZUELA displayed to agents a contractor's license for Make It Happen Air Conditioning Co., an Occupational Safety and Health Administration Construction Safety and Heath card, and the EPA certification on his phone.

16.     CBP records indicate that on January 28, 2022, VALENZUELA attempted to enter the United States from Mexico with eight cases of Freon R-22 refrigerant and was referred to the secondary inspection area. VALENZUELA stated that he believed those refrigerants to be illegal because they were made in China, while the HFC 404A refrigerants he was currently importing were made in Mexico.

17.     I responded to the POE and received a black Apple iPhone 14 Pro Max cellular phone possessed by VALENZUELA at the time of his crossing (the **Target Device**). At the time of seizure at the POE, the **Target Device** was assigned the unique identifying number FP&F 2024250400099901-0003 by CBP. I subsequently transferred custody of the **Target Device** to an EPA Special Agent, who advised me he was taking it to their evidence locker at 880 Front Street in San Diego.

18. According to their labels, the canisters found in VALENZUELA's vehicle were labeled as "404A" refrigerant, which contain regulated HFCs. Specifically, the canisters contain a mixture of HFC-143a, HFC-125, and HFC-134a, all of which are regulated HFCs under U.S. law. In the United States, federal regulations limit the importation of regulated HFCs to individuals who have been granted a consumption allowance. A search of the EPA database of individuals granted a consumption allowance for regulated HFCs in the United States showed that VALENZUELA holds no such allowance. Additionally, because these regulated HFCs were imported without a consumption allowance, it is unlawful to distribute them in the United States.

19. Given the facts surrounding VALENZUELA's detention, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in the smuggling of regulated substances, there is probable cause to believe that information relevant to the offenses of conspiracy, smuggling, and illegal importation regulated HFCs will be found in the **Target Device**. Such evidence, which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging applications), photographs, audio files, videos, or location data, would be relevant to proving conspiracy, smuggling, and/or the illegal importation of regulated substances by:

      a.      tending to indicate efforts to import and sell regulated HFCs;

      b.      tending to indicate contact with individuals regarding the location(s) at which the regulated HFCs are being used;

c.    tending to identify electronic media accounts–such as email addresses, IP addresses, social media accounts and phone numbers used to facilitate the importation and/or sale of regulated HFCs;

d.    tending to identify co-conspirators, criminal associates, or others involved in importation and/or sale of regulated HFCs;

e.    tending to identify travel to or presence at locations involved in the importation and/or sale of regulated HFCs;

f.    tending to identify proceeds associated with the importation and/or sale of regulated HFCs in the United States;

g.    tending to identify information regarding the legal requirements applicable to the importation and/or sale of regulated HFCs in the United States;

h.    tending to indicate official authorization to import and/or sell regulated HFCs;

i.    tending to identify the user of, or persons with control over or access to, the **Target Device**;

j.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, and

k.    images of regulated substances identified in the cited sections of the Clean Air Act, and accompanying regulations.

20. Finally, I note that regulated HFCs smuggling conspiracies, like drug conspiracies, generally entail detailed and intricate planning as part of efforts to evade detection by law enforcement.  In my professional training and experience, I am aware that this requires planning and coordination in the days and weeks (and often months) prior to the relevant smuggling-related event. Additionally, I am aware that co-conspirators are often unaware of a subject's vehicle or pedestrian stop at a POE and will continue to attempt to communicate with the subject after the vehicle or pedestrian stop to determine the whereabouts of their valuable cargo, particularly in the hours following the arrest. Therefore, I believe that the appropriate date range for the search of the **Target Device** is from February 22, 2024, up to and including April 22, 2024.

**METHODOLOGY**

21. It is not possible to determine, merely by knowing the cellular telephone=s make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in Aflight mode@ which disables access to the network.

Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and the memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date this warrant is signed, absent further application to this court.

//

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

24.   There have been no prior attempts to obtain the evidence sought in this warrant, except as described herein.

**CONCLUSION**

25. Based on all the facts and circumstances described above, I believe probable cause exists to conclude that VALENZUELA used the **Target Device** to facilitate the offenses of conspiracy, smuggling and illegal importation and/or sale of regulated substances, and to communicate with co-conspirators. The **Target Device** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations of Title 18, United States Code, Section 545; Title 42, United States Code, Sections 7413(c) and 7675, and Title 40, Code of Federal Regulations, Sections 84.5(b) and (f).

26. Because the **Target Device** was promptly seized following VALENZUELA's search at the San Ysidro POE, there is probable cause to believe that evidence of the offenses committed by VALENZUELA continue to exist on the **Target Device**.  As stated above, I believe that the appropriate date range for this search is from February 22, 2024, up to and including April 22, 2024.

27. WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents, EPA Special Agents, and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Device**, as described in

Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

James Reavis, Special Agent
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1 on this 25th day of April, 2024.

THE HON. ALLISON H. GODDARD
United States Magistrate Judge

16